141 So.2d 825 (1962)
JAMES L. DUPUY, APPELLANT,
v.
THE STATE OF FLORIDA, APPELLEE.
No. 61-728.
District Court of Appeal of Florida, Third District.
June 5, 1962.
Rehearing Denied June 21, 1962.
Albert L. Weintraub and A. Jay Cristol, Miami, for appellant.
Richard W. Ervin, Atty. Gen., and David U. Tumin, Asst. Atty. Gen., for appellee.
Before HORTON, BARKDULL and HENDRY, JJ.
HORTON, Judge.
On January 6, 1961, separate informations were filed charging the appellant, defendant below, with practicing dentistry on Mr. Fred Godoy and Mrs. Myrna Shadron *826 without first having obtained a license from the Florida State Board of Dental Examiners. He was arraigned, pleaded not guilty in both cases, and waived his right to trial by jury. The cases were consolidated and tried by the court without a jury. The court found the defendant not guilty in the case involving Mr. Godoy and guilty in the case involving Mrs. Shadron. An order was entered staying adjudication of guilt and imposition of sentence and placing defendant on probation for two years. Defendant then brought this appeal.
It appears from the record that defendant is a licensed dental technician, practicing his profession in Dade County, Florida. In the fall of 1960, his laboratory was visited by Mr. Godoy, a paid investigator for the Board of Dental Examiners, who was making a spot check of the laboratories in the area to determine whether any laws were being violated. This was a routine investigation and was not prompted by any evidence, complaint or suspicion that the defendant was practicing dentistry without a license,[1] nor was any evidence introduced at the trial which would indicate that the defendant was engaged in such a course of conduct. At Godoy's request, the defendant made a partial plate for him. A week or two later, Godoy returned with Mrs. Shadron, another paid investigator, and, after some negotiations, defendant relined her dental plate. On the basis of these transactions, the informations were filed.
Appellant contends the record indicates that he should have been found not guilty by reason of entrapment. We find this contention has merit.
Though not looked upon with approbation, government inducement of crime is permitted by the courts primarily on the ground that it is a necessary concomitant to the detection and prevention of a course of criminal activity which could not otherwise be prevented. Langford v. State, 111 Fla. 506, 149 So. 570. When government inducement is employed to entrap someone not engaged in such a course of activity, it has not detected crime but has merely helped to create it.[2] Hence the rule is that the defense of entrapment is available to those who are instigated, induced or lured by an officer of the law or other person to commit a crime which they had otherwise no intention of committing and, conversely, not available to those with the requisite criminal intent who are merely furnished with the opportunity to commit crime by an officer of the law or other person acting in good faith with the purpose of detecting and preventing crime. Lashley v. State, Fla. 1953, 67 So.2d 648. Put another way:
"In determining whether or not an entrapment may be sufficient to constitute *827 a defense, the distinction to be observed is the difference between cases where in one it is shown that officers, in order to establish the basis for a prosecution, entice one who is not engaged in a criminal enterprise to commit an offense mala prohibita, when otherwise the person so enticed would not have engaged in such enterprise, and in the other it is shown that one engaged in an unlawful enterprise is enticed to do an act which may be used as direct evidence of his guilt."
Langford v. State, supra, 149 So. at p. 571. In view of the foregoing, it would seem that in a case where the defense of entrapment is raised it is incumbent upon the state to make a showing amounting to more than mere surmise and speculation that the intent to commit crime originated in the mind of the accused and not in the minds of the officers of the government.
In the instant case, no such showing was made. Nor does there appear in the record anything upon which to base a conclusion that the defendant was engaged in such a course of criminal activity as would indicate the likelihood that he was merely presented with the opportunity to commit a crime which originated in his mind and not in those of the Board's investigators.
The state contends that such a course of conduct has been established in the case involving Mrs. Shadron by virtue of the fact that the defendant had previously treated Mr. Godoy. We find this contention to be without merit. To accept this contention would be to destroy the concept of entrapment.
Other alleged errors are assigned by appellant, but in view of our prior conclusion it is unnecessary to discuss them.
Accordingly, the judgment appealed is reversed, and the cause remanded with directions to discharge the appellant.
Reversed and remanded with directions.
NOTES
[1] On cross examination, Mr. Floyd Miner, the chief investigator for the Board, testified:

"Well, I just don't remember what the mechanics were of going to Dupuy's laboratory. I have a list of all the technicians and laboratories * * * and we * * * at intervals block off certain areas and we cover all the labs, and I think at this particular time this particular lab was visited he [Godoy] was making his rounds covering all labs. In other words, we made close to eighteen, nineteen hundred investigations a year."
On cross examination, Mr. Godoy testified:
"I was to investigate all these dental labs to find out if any of them would make a partial plate for me."
[2] See Peters v. Brown, Fla. 1951, 55 So.2d 334, a case also involving the Florida State Board of Dental Examiners where Mr. Justice Terrell, speaking for the Supreme Court, said:

"In other words, all the evidence * * is purchased evidence * * *. I do not think this court should sanction such apostacy from approved procedure. It is contrary to law and public policy for an officer or member of an administrative board to induce the commission of a wrong or a crime for the purpose of securing a pretext to punish it."